UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
ERIC MORRIS-MENDOZA,

                Plaintiff,

       -against-                     **COMPLAINT**

CITY OF NEW YORK,
STEVE FRANZEL, and
JOHN and JANE DOES 1-5,
                                  **PLAINTIFF DEMANDS**
               Defendants.          **A TRIAL BY JURY**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

        Plaintiff Eric Morris-Mendoza, by his attorneys, the Lumer Law Group, as and

for his Complaint, hereby alleges as follows, upon information and belief:

### PARTIES, VENUE and JURISDICTION

        1.      At all times hereinafter mentioned, plaintiff was an adult male and a

resident of the State of New York.

        2.      At all relevant times hereinafter mentioned, defendant City of New

York was and is a municipal corporation duly organized and existing under and by virtue of

the laws of the State of New York and acts by and through its agencies, employees and

agents, including, but not limited to, the New York City Police Department ("NYPD"), and

their employees.

        3.      At all relevant times hereinafter mentioned, defendant Steve Franzel

was employed by the City of New York as a member of the NYPD. Franzel is sued herein in

his individual capacity.

4.    At all relevant times hereinafter mentioned, defendants John and Jane Doe 1-5 (the "Doe defendants") were employed by the City of New York as members of the NYPD. The Doe defendants' identities are not presently known to plaintiff. The Doe defendants are sued herein in their individual capacity.

5.    This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 1983.

6.    Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq., in the Eastern District of New York, where the defendant City of New York resides, and where the majority of the actions complained of herein occurred.

## RELEVANT FACTS

7.    On September 1, 2016, during the late afternoon or early evening hours, plaintiff was lawfully present inside 999 President Street in Kings County, New York (the "premises").

8.    The first floor of the premises contained a delicatessen.

9.    While plaintiff was in the basement of the premises, which he entered directly from outside the premises, members of the NYPD, including, upon information and belief, the individual defendants, and, brandishing weapons, entered the basement of the premises.

10.    The defendants seized, handcuffed, and arrested plaintiff and several other individuals in the basement.

-2-

11.     Plaintiff did not resist his arrest.

12.     The defendants seized, handcuffed, and arrested at least three people in the first floor delicatessen.

13.     The plaintiff and other individuals arrested by the defendants were transported to a local precinct station house. where he was imprisoned for a period of hours while his arrest was processed.

14.     Plaintiff was later transported to Central Booking, where he was imprisoned for many more hours until his arraignment on September 3, 2016.

15.     While plaintiff was in defendants' custody, Franzel completed, or caused to be completed, arrest paperwork in which he falsely claimed that plaintiff engaged in criminal or unlawful conduct, such as (i) the possession of a handgun; and (ii) the possession of gambling records.

16.     Franzel memorialized, or caused to be memorialized, in sum and substance, allegations that he and other officers had recovered a loaded .380 Taurus handgun, and gambling and betting slips from the basement. Based on this alleged recovery, the defendants had arrested plaintiff and at least four other people in the basement, as well as at least three more individuals in the delicatessen.

17.     Each of these allegations was materially false as related to plaintiff.

18.     At no time did plaintiff actually or constructively possess any of the contraband defendants claim to have recovered, nor was there a reasonable basis for the defendants to believe that he did so possess any of the alleged contraband.

19.     At no time did defendants have sufficient legal cause to arrest and imprison plaintiff, nor was it reasonable for defendants to believe such cause existed.

20.     While plaintiff was in defendants' custody, Franzel forwarded, or caused to be forwarded, the arrest paperwork containing these materially and fundamentally false allegations to the Kings County District Attorney's office ("KCDA").

21.     Franzel also forwarded, or caused to be forwarded, the arrest paperwork for each of the other individuals arrested with plaintiff.

22.     Franzel communicated this falsified narrative to the KCDA, in relevant part, to justify plaintiff's unlawful arrest and persuade the KCDA to commence plaintiff's criminal prosecution.

23.     Upon information and belief, shortly after this information was forwarded to the KCDA, Franzel spoke with the KCDA about the paperwork he had submitted, or caused to be submitted, and confirmed his fabricated narrative in order to ensure that the KCDA would initiate the prosecution.

24.     Franzel was able to successfully persuade the KCDA to prosecute plaintiff, and on September 3, 2016, the plaintiff was formally arraigned as Eric Morris in Kings County Criminal Court under Docket 2016KN052316 on multiple charges of gun possession and one count of criminally possessing gambling records.

25.     Bail was set at arraignment but, as plaintiff was unable to immediately post the required amount, he was taken to Rikers Island, where he remained in defendants' custody until September 5, 2016, when he was finally able to post bail.

26.     Plaintiff was subsequently obligate to return to court on numerous occasions as the prosecution against him continued.

27.     Plaintiff was never indicted, although some of the charges were felonies.

28.     On March 31, 2017, all charges against plaintiff were dismissed, and the criminal prosecution terminated in plaintiff's favor.

29.     That at all times relevant herein, the defendants were on duty and acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

30.     Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

31.     The individual defendants willfully and intentionally seized, searched, detained, and arrested plaintiff, and caused him to be imprisoned, without probable cause, and without a reasonable basis to believe such cause existed.

32.     Plaintiff had not been engaged in any criminal conduct, nor was he engaged in any conduct that could reasonably be viewed as criminal.

33.     Despite the absence of sufficient legal cause, plaintiff was arrested and jailed.

34.     To the extent that any of the individual defendants did not affirmatively

engage in this conduct, each such defendant was aware of his or her fellow officers' misconduct, had ample opportunity to intervene and prevent or limit the constitutional harms being visited on the plaintiff, but failed to do so.

35.     By so doing, the individual defendants subjected plaintiff to false arrest and imprisonment, and thereby violated and aided and abetted in the violation of plaintiff's rights under the Fourth Amendment of the United States Constitution.

36.     By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer the deprivation of his liberty, loss of his constitutional rights, physical injuries, and mental anguish.

## SECOND CAUSE OF ACTION

37.     Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

38.     The individual defendants willfully and intentionally fabricated evidence by falsely memorializing claims to have witnessed plaintiff engage in criminal or unlawful activity, and then forwarded these materially false claims to the KCDA in order to justify their arrest of plaintiff, and to justify, bring about and cause plaintiff to be deprived of his liberty and to be criminally prosecuted.

39.     To the extent that any of the individual defendants did not affirmatively engage in this conduct, each such defendant was aware of his or her fellow officers' misconduct, had ample opportunity to intervene and prevent or limit the constitutional

harms being visited on the plaintiff, but failed to do so.

31.    By so doing, the individual defendants subjected the plaintiff to the denial of a fair trial and violation of his right to due process fabricating evidence and otherwise providing prosecutors with a materially false and misleading version of events, and thereby violated plaintiff's rights under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution.

40.    By reason thereof, the individual defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer the deprivation of his liberty, loss of his constitutional rights, physical injuries, and mental anguish.

## THIRD CAUSE OF ACTION

41.    Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

42.    The individual defendants willfully, deliberately, and maliciously caused the initiation of plaintiff's criminal prosecution by presenting the KCDA with a materially misleading version of facts grounded in fabricated evidence, and continuing to maintain this false narrative until the case was eventually dismissed.

43.    To the extent that any of the individual defendants did not affirmatively engage in this conduct, each such defendant was aware of his or her fellow officers' misconduct, had ample opportunity to intervene and prevent or limit the constitutional harms being visited on the plaintiff, but failed to do so.

44.     By so doing, the individual defendants caused plaintiff to be maliciously prosecuted, and thereby violated plaintiff's rights under the Fourth Amendment of the United States Constitution.

70.     By reason thereof, the individual defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer the deprivation of his liberty, loss of his constitutional rights, physical injuries, and mental anguish.

## FOURTH CAUSE OF ACTION

45.     Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

46.     Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the NYPD.

47.     The individual defendants' actions in this matter – necessarily condoned by and carried out with the approval of their fellow officers and supervisors – were carried out in accordance with an existing plan or policy created or otherwise condoned by the municipal defendant designed to increase the number of arrests made without regard to probable cause.

48.     The purpose of this policy or plan was to generate large numbers of arrests to help the NYPD create a false impression of positive activity by their officers.

49.     Members of the NYPD have a demonstrated history of making wholesale arrests in response to, and motivated by, the NYPD's insistence on quotas, which the NYPD seeks to disguise by recasting this naked demand for a monthly minimum of arrests under the term, "activity" or "activity level."

50.     Member of the NYPD, including the individual defendants, were, at all relevant times herein, evaluated, at least in part, on the basis of their "activity" which is measured by the number of arrests made, search warrants secured, and other, similar criteria. Thus, members of the NYPD routinely make arrests and engage in other police activity without sufficient legal cause in order to raise their levels of "activity" and improve the perception of their job performance.

51.     The NYPD generally tracks the number of arrests made by each officer but does not take into account the outcome of these arrests, even though this information is available to the NYPD. As a result, officers are well aware that (a) they are being evaluated based on, in large part, the number of arrests made, and (b) their supervisors do not care whether these arrests lead to criminal prosecutions, much less convictions.

52.     More precisely, under this policy or plan, officers are encouraged or pressured to make as many arrests as possible, which has caused and will continue to cause, its officers, including the individual defendants and their colleagues, to make arrests regardless of whether there was any factual basis for the charges.  The officer(s) would then fabricate claims of having seen the person(s) being arrested in possession of weapons or illegal narcotics or otherwise engaged in criminal activity.

53.     Upon information, this policy was in existence as of September 1, 2016, as codified in an October 17, 2011, Police Officer Performance Objectives Operation Order in which NYPD Commissioner Kelly directed all commands that, "Department managers can and must set performance goals" relating to the "issuance of summons, the stopping and questioning of suspicious individuals, and the arrests of criminals."

54.     Upon information and belief, that same Operation Order stated, "uniformed members. . . .Who do not demonstrate activities . . . or who fail to engage in proactive activities . . . will be evaluated accordingly and their assignments re-assessed."

55.     In the case of *Floyd v City of New York*, 813 F. Supp. 2d 417, 448 (S.D.N.Y.) on reconsideration, 813 F. Supp. 2d 457 (S.D.N.Y. 2011), United States District Judge Shira A. Scheindlin denied the City of New York's motion for summary judgment, in part, based on evidence that the NYPD had a widespread practice of imposing illegal stop and frisk, summons, and arrest quotas on officers. The evidence cited in *Floyd*, included testimony from various officers, audio recordings of roll call meetings in which precinct commanders issued orders to produce certain numbers of arrests, stops and frisks, and summonses, and a labor grievance on behalf of six officers and one sergeant who were transferred out of the same 75 precinct where plaintiff was arrested for allegedly failing to meet a monthly ten-summons quota.  In January 2006, a labor arbitrator found that this same 75 precinct had imposed summons quotas on its officers in violation of New York State labor laws.

56.     In another Southern District of New York case, *Schoolcraft v. City of New*

*York*, 10 CV 6005 (RWS), the plaintiff, a police officer assigned to Brooklyn's 81 precinct alleged that precinct commanders and supervisory personnel expressly imposed arrest and summons quotas, and explicitly directed officers to "arrest and summons fully innocent people" and then come up with a justification later.

57.     In 2012, Police Officer Craig Matthews commenced *Matthews v. City of New York*, 12 CV 1354 (BSJ) in the Southern District of New York, alleging that his complaints that the existing quota system was leading to unjustified stops and arrests, and thereby causing damage to the department's relationship with the local community led to his termination. There was little dispute that he made these complaints or that they were well founded. *See Matthews v. City of New York*, 779 F.3d 167, 169 (2d Cir. 2015).

58.     That this plan is still in effect is reflected in a class action suit apparently filed in August 2015 by various police officers alleging that the NYPD still requires officers to meet fixed numerical goals for arrests and court summonses each month, according to a New York Times article published February 18, 2016, which can be found online at http://nyti.ms/1R9FCGu.

59.     The policy or plan was kept in effect through the date of plaintiff's arrest, despite the municipal defendant's knowledge that county prosecutors were often not charging the individuals arrested, or otherwise not actively pursuing their prosecutions, or that there was insufficient evidence to justify the arrests and illegal searches, or that the arresting officers were seeking to bolster the arrests with false allegations, and that the prosecutors often had found insufficient cause to justify the imposition of charges or

continued prosecution if charges were filed.

60.     By maintaining such a quota system, the NYPD has created a system by which officers are sufficiently pressured to make arrests such that they will be compelled to do so even when such arrests should not be made or where there is objectively no lawful basis for such an arrest.

61.     The NYPD's insistence on maintaining this system reflects a deliberate indifference to the likelihood that police officers will succumb to the pressure to make arrests, regardless of whether probable cause exists for said arrests, which will result in unjustified and unlawful arrests, such as what occurred here.

62.     By reason thereof, the municipal defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer the deprivation of his liberty, loss of his constitutional rights, physical injuries, and mental anguish.

## <u>DEMAND FOR A JURY TRIAL</u>

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiff demands judgment against the individual defendants and the City of New York as follows:

  i.      actual and punitive damages against the individual defendant in an amount to be determined at trial;

  ii.      actual damages in an amount to be determined at trial against the City of New York;

  iii.      statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of the action; and

  iv.      such other relief as the Court deems just and proper.

Dated:    New York, New York
         July 19, 2018

            LUMER LAW GROUP
            Attorneys for Plaintiff

            Michael Lumer, Esq.
            225 Broadway, Suite 2700
            New York, New York 10007
            (212) 566-5060